SLAVIK S. LEYDIKER (SBN 276264)
Law Office of Steve Leydiker
1771 Woodside Road
Redwood City, CA 94061
TEL: (650) 364-3455  FAX: (650) 616-3924

Attorney for Movant, MARIA SOSA

FILED
JAN -8 2015
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

ECF - Exempt

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In Re:

KINGSWAY CAPITAL PARTNERS, LLC,

    Debtor.

Case No.: 14-31532 HLB 11

Date of Hearing: February 19, 2015
Time:         2:00 p.m.
Location:     235 Pine St., 23rd Fl.
               San Francisco, CA

**MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

**[SUPPORTING DECLARATION OF MARIA SOSA FILED SEPARATELY]**

LAW OFFICES OF
STEVE LEYDIKER
1771 WOODSIDE ROAD
REDWOOD CITY, CA 94061
(650) 367-1771

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 14-31532  Doc# 73  Filed: 01/08/15  Entered: 01/09/15 10:55:07  Page 1 of 8

# INTRODUCTION

Maria Sosa, the movant in the above-captioned case ("Movant"), respectfully submits her Brief in Support of Motion for Relief from Automatic Stay (the "Motion"). Pursuant to 11 U.S.C. § 362(d), Movant seeks relief from the automatic stay so she may be allowed to proceed to exercise her rights under applicable nonbankruptcy law with respect to the real property located at 2148 University Avenue, East Palo Alto, California 94303 (the "Subject Property"). This Brief responds to the Courts order of December 8, 2014, instructing the parties to address whether the lease at issue terminated by operation of law.

The question of whether a bankruptcy trustee or debtor in possession may assume or reject a lease is one that requires a two prong analysis. The first prong, which the Court specifically identified for briefing, is whether the lease at issue terminated prior to Debtor filing for bankrtupcy protection. If the Court determines that the lease in fact terminated by operation of law, the second prong of the analysis considers whether the lease should be resurrected pursuant California's anti-forfeiture statutes. This second step "permits the debtor-in-possession the same opportunities to avoid forfeiture of a lease or executory contract that it would have received under state law absent the bankruptcy proceedings." (*City of Valdez v. Waterkist Corp.* (*In re Waterkist Corp.*), 775 F.2d 1089, 1091 (9th Cir., 1985).) The burden of proof as to both prongs of the test is on Debtor. (11 U.S.C. § 362(g) (West 1979 & 1988 Supp.).)

# ARGUMENT AND AUTHORITIES

**1. The Lease Terminated by Operation of Law Prior to Debtor Filing the Underlying Petition for Bankruptcy.**

The Bankruptcy Code permits a trustee, with court approval, to "assume or reject any executory contract or unexpired lease of the debtor." (11 U.S.C. § 365(a).) However, "[t]he trustee may not assume…any executory contract or unexpired lease of the debtor…if…such lease is nonresidential real property and has been terminated under applicable nonbankrtupcy law prior to the order for relief." (*Vanerpark Props. v. Buchbinder* (*In re Windmill Farms, Inc.*) 841 F.2d 1467, 1472 (9th Cir., 1988); *Waterkist*, 775 F.2d at 1091; 11 U.S.C. § 365(c)(3).) The phrase

LAW OFFICES OF
STEVE LEYDIKER
1771 WOODSIDE ROAD
REDWOOD CITY, CA 94061
(650) 367-1771

2

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 14-31532    Doc# 73    Filed: 01/08/15    Entered: 01/09/15 10:55:07    Page 2 of 8

"applicable nonbankrtupcy law" means applicable state law. (*Waterkist,* 775 F.2d at 1091; *In re Beck,* 5 B.R. 169, 171 (Bankr. D. Haw. 1980) (debtor could not assume beauty salon license that licensor terminated prepetition under nonbankruptcy law).) Simply put, if a lease of nonresidential real property has been terminated before the filing of a bankruptcy petition, there is nothing left for the trustee to assume. (*Windmill Farms,* 841 F.2d at 1469; *See Kearny Mesa Crossroads v. Acorn Investments* (*In re Acorn Investments*), 8 B.R. 506, 510 (Bankr. S.D. Cal. 1981).)

In the context of a nonresidential lease, at least one district court has held that the filing of a complaint for unlawful detainer terminates the lease for purposes of preventing it form being an executory contract, which can be assumed in bankruptcy. (*See In re Escondido W. Travelodge,* 52 B.R. 376 (S.D. Cal. 1985).) In *Escondido,* the court noted that cause exits to lift the automatic stay if the lease cannot be assumed, and the termination under California landlord-tenant law occurs when a landlord, after complying with the appropriate notice, files an unlawful detainer action in state court. Although the court recognized that mere filing is not a formal adjudication of the validity of the termination, it reasoned that relief from stay was nonetheless appropriate, to allow the validity of the termination to be litigated in the state court forum under state law. (*Escondido,* 52 B.R. at 382.)

The United States Court of Appeals for the Ninth Circuit has also interpreted California law as to whether a tenant retains any property interest once a lease has been terminated. In the case of *Windmill Farms,* the Ninth Circuit held that a lease of real property is terminated under California law when the lessor affirms his election to terminate the lease as expressed in a notice to pay rent or quit which the lessor has previously served on the lessee. (*Windmill Farms,* 841 F.2d at 1469-71.) This affirmation of the termination of the lease by lessor is usually accomplished by the filing of the complaint for unlawful detainer. (*In re Smith,* 105 B.R. 50, 53-54 (Bankr. C.D. Cal. 1989).) Thus, if a lessor properly notifies the lessee of the lessor's intention to terminate the lease, the unpaid rent is not paid within the appropriate period of notice, and the lessor affirms his intention to terminate the lease by, at least, filing a complaint for unlawful detainer, the lease is terminated and the lessee retains no property interest with

LAW OFFICES OF
STEVE LEYDIKER
1771 WOODSIDE ROAD
REDWOOD CITY, CA 94061
(650) 367-1771

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 14-31532    Doc# 73    Filed: 01/08/15    Entered: 01/09/15 10:55:07    Page 3 of 8

regards to the leased real property. (*Id.* at 54.) If the lessor stated a forfeiture election in his notice to the lessee, the lessor is also entitled to a judicial declaration of forfeiture of the lease. (*Windmill Farms* 841 F.2d at 1470.)

In arriving at its conclusion, The *Windmill Farms* Court thoroughly analyzed California Civil Code section 1951.2(a), which provides that "if [the lessee's] right to possession is terminated by the lessor because of breach of the lease, the lease terminates." (Cal. Civ. Code § 1951.2(a).) It also examined California's unlawful detainer statutes, such as California Code of Civil Procedure section 1161 and determined that a tenant who is guilty of an unlawful detainer cannot possibly have the right to possession of the property when notice is properly provided. That is, possession would be unlawful after the three-days' notice period has expired. (*Windmill Farms*, 841 F.2d at 1969.) "In an ensuing unlawful detainer proceeding, the court does not decide whether the lessor terminated the lease. That has already occurred. Instead, the court decides whether the termination was proper and if it was, the court grants the lessor a judgment for possession of the property." (*Id.*)

In the instant case, the Subject Property is commercial property and therefore falls within the ambit of 11 U.S.C. § 365(c)(3). Moreover, Movant prudently complied with the notice requirements under the lease and California Civil Code sections 1161 to 1161.5. (Sosa Decl., ¶¶ 4-5.) Debtor stopped paying rent to Movant in or about May 2014. Thereafter, Movant spoke to Debtor on multiple occasions to demand payment. (Sosa Decl., ¶ 4.) On or about June 2, 2014, Movant provided Debtor with written notice of the default, demanding that Debtor cure the default by June 17, 2014 or Movant would proceed with legal action. (Sosa Decl., ¶ 4.) Debtor, however, did not respond to these repeated demands.

On or about July 1, 2014, Movant served Debtor with a 3-Day Notice to Pay Rent or Vacate (the "Notice"). (Sosa Decl., ¶ 5). The Notice explicitly provided that unless Debtor cure the default by July 4, 2014, Movant would file an unlawful detainer action and declare a forfeiture of the lease. It is uncontroverted that Debtor refused pay rent. Consequently, Movant filed an unlawful detainer action against Debtor on July 8, 2014 in San Mateo County Superior Court. (Sosa Decl., ¶ 6.) To date, Debtor has made no attempt to cure the default and has done

4

LAW OFFICES OF
STEVE LEYDIKER
1771 WOODSIDE ROAD
REDWOOD CITY, CA 94061
(650) 367-1771

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 14-31532   Doc# 73   Filed: 01/08/15   Entered: 01/09/15 10:55:07   Page 4 of 8

everything in its power to stall the eviction process.

Movant has complied with all that is required under the law to effect the termination the lease. Based on the foregoing, the leasehold interest terminated prior to Debtor filing for bankruptcy, which constitutes "cause" within the meaning of 11 U.S.C. § 362(d) to terminate stay.

### 2. Kingsway Capital Parters, LLC Is Not Entitled to Relief from Forfeiture of the Lease.

The Ninth Circuit Court, in *Windmill Farms* left unanswered the question of whether relief from forfeiture was available to a party seeking to assume a lease in bankruptcy. As a general rule, the filing of the bankruptcy petition does not resurrect a lease, and the bankruptcy court does not have the power to resurrect a lease which was properly terminated under state law prior to filing of the bankruptcy petition. (*Waterkist Corp.*, 775 F.2d at 1091; *In re 1345 Main Partners, Ltd.*, 215 B.R. 536, 541 (Bankr. S.D. Ohio 1997).) If the lease has terminated and the debtor moves to assume the lease, an inquiry must be made as to whether the termination could have been reversed under any applicable state law anti-forfeiture provision. (*Windmill Farms*, 841 F.2d at 1471-72.)

Code of Civil Procedure section 1179 provides the exclusive procedure for obtaining relief from an unlawful detainer forfeiture of a rental. (*Boston Properties v. Pirelli Tire Corp.* (1982) 134 Cal.App.3d 985; see also *Wilson v. Bill Barry Enterprise*, 822 F.2d 859 (9th Cir., 1987).) The Code provides, in pertinent part, that "[t]he court may relieve a tenant against a forfeiture of a lease or rental agreement, whether written or oral, and whether or not the tenancy has terminated, and restore him or her to his or her former estate or tenancy, in case of hardship…" (Cal. Civ. Code § 1179.) The court must "take into consideration the circumstances of the case, the hardship, if any, to the lessee from the forfeiture, the hardship, if any, to the lessor from relieving the lessee from the forfeiture, the willful or other character of the breach, and then use its best discretion in determining whether relief will be granted." (*Thrifty Oil Co. v. Batarse* (1985) 174 Cal.App.3d 770, 777 (quoting *Hignell v. Gebala* (1949) 90 Cal.App.2d 61, 70–71).) Importantly, a finding of hardship that would result from forfeiture does not automatically require

the court to grant relief. (*Olympic Auditorium, Inc. v. Superior Court* (1927) 81 Cal. 283.)

Relief from forfeiture of the lease will in no way place the Movant in a position as if the breach had not occurred. It will essentially force Movant to continue a landlord-tenant relationship with Debtor, while Debtor continues to beleaguer Movant with demands of millions of dollars, conjointly with litigation seeking the same.[1] Certainly, a continuing landlord-tenant relationship would only serve to foster further resentment by both parties and aggrevate an already toxic relationship.

Movant's hardship would not end there. Movant has been desparately trying to finalize the sale of her commercial property in which Debtor is a tenant. (Declaration of Maria Sosa (Sosa Decl.) ¶ 9-10.) Movant needs to sell her property because she no longer has the energy or financial resources to sustain ownership. She is has very little income and survives primarily on social security. She simply cannot afford to continue owning the commercial property. (Sosa Decl., ¶ 9.)

What is more, Debtor's continued possession of the Subject Property would make it nearly impossible to sell the commercial property, as no potential buyer would be willing to buy into a lawsuit. Debtor's CEO, Nathaniel Basola Sobayo ("Sobayo'), already filed a lawsuit against everyone involved in the pending sale, including the proposed buyer and the realtors. There is no reason to believe that Sobayo wouldn't file a lawsuit against the next proposed buyer. In fact, Sobayo has filed no fewer than ten (10) lawsuits in the United States District Court, Northern District of California, and mostly involving property.[2] He's certainly sophisticated in that respect.

Movant, as a seller, has a duty to disclose known facts which materially affect the value or desirability of her property. Arguably, pending litigation involving the property and a litigious tenant affect the value and desirability of the property. Suffice it to say, Movant's hardship resulting from relief from forfeiture would be severe, if not immeasurable.

---

[1] On September 5, 2014, Nathaniel Basola Sobayo sued Maria Sosa in state court seeking damages in the amount of $1,650,000. (San Mateo County Superior Court Case No. CIV530289). Thereafter, on November 14, 2014, Nathaniel Basola Sobayo filed an adversary action against Maria Sosa, seeking damages in the amount of $5 million.
[2] Debtor's filings in Federal Court involve the following known cases: 5:09–cv–01436–JW; 5:09–cv–03388–JW; 5:09–cv–03961-JW, 5:09–cv–04911-JW; 3:11–cv–00734–JSW; 3:10-cv-03941-WHA; 4:11–cv–00701–SBA; 4:11–cv–03850–CW; 4:12–cv–05263–SBA; and 3:13–cv–01804–SI.

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

In contrast, with the exception of having to pack and move, it's hard to imagine what hardships Debtor would suffer if it is forced to vacate the Subject Property. Movant did not expend monies in construction or fixtures to the Subject Property after taking possession and would therefore suffer no prejudice from not being able to recoup those types of expenses. (Sosa Decl., ¶ 3.) What is more, the Subject Property is not necessary for Debtor's continued existence an automobile rentals business, as Debtor could easily rent another space and continue the same operation. Ostensibly, the only hardship Debtor could face is the burden of relocation.

Debtor's breach was not a trivial one. It willfully and insolently refused to pay rent, blaming Movant for supposed property damage that it suffered following a rainstorm. Debtor was informed on multiple occasions that, with respect to a commercial lease, a landlords covenant to repair and a tenant's covenant to pay rent are not dependent on one another. (Sosa Decl., ¶ 4.) That is, the duty to pay rent continues ... notwithstanding the landlord's substantial interference with the tenant's use and possession. (*Petroleum Collections Inc. v. Swords* (1975) 48 Cal.App.3d 841; *See also Custom Parking, Inc. v .Superior Court* (1982) 138 Cal.App.3d 90, 99.) Simply put, Debtor's refusal to pay rent was in bad faith.

Debtor will undoubtedly make reference to the familiar principles that forfeitures are abhorred. (*See Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal. App. 3d 1033; *see also Reed v. South Shore Foods, Inc.* (1964) 229 Cal. App. 2d 705, 713.) Any argument to that effect must fall flat in light of the circumstances of this case. Debtor's failure to pay rent was not based on its inability to pay. The situation was not one where Debtor fell on hard times and simply could not afford the rent. Nor was the situation one where debtor mistakenly believed it had the right to withhold rent. The circumstances of this case suggest far more bellicose conduct on the part of Debtor – conduct that should bar anti-forfeiture relief. "He who seeks equity must do equity." This maxim is not a moral persuasion but a fundamental maxim of equity jurisprudence. (*See 2 Pomeroy, Equity Jurisprudence* (5th ed. 1941) § 385, pp. 51-53.) Debtor's conduct does not warrant equitable relief, as it had plenty of opportunities to cure the default. Instead, it chose to exhaust Movant with bullying and delay tactics. Accordingly, equity pursuant to California Civil Code section 1179 should not be invoked and the lease should not be

7

LAW OFFICES OF
STEVE LEYDIKER
1771 WOODSIDE ROAD
REDWOOD CITY, CA 94061
(650) 367-1771

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 14-31532   Doc# 73   Filed: 01/08/15   Entered: 01/09/15 10:55:07   Page 7 of 8

reinstated.

## CONCLUSION

Based on the forgoing, Movant respectfully request that her Motion for Relief from Automatic Stay be granted.

Date: January 7, 2015

SLAVIK S. LEYDIKER

8

LAW OFFICES OF
STEVE LEYDIKER
1771 WOODSIDE ROAD
REDWOOD CITY, CA 94061
(650) 367-1771

MARIA SOSA'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 14-31532    Doc# 73    Filed: 01/08/15    Entered: 01/09/15 10:55:07    Page 8 of 8