C. Alex Naegele (CA Bar No. 255887)
C. ALEX NAEGELE,
A PROFESSIONAL LAW CORPORATION
95 South Market Street, Suite 300
San Jose, CA, 95113
Telephone: (408) 995-3224
Facsimile: (408) 890-4645
Email: alex@canlawcorp.com

Attorney for Kingsway Capital Partners, LLC
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 14-31532  HLB |
| | ) | |
| Kingsway Capital Partners, LLC | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **KINGSWAY CAPITAL PARTNERS,** |
| | ) | **LLC'S MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN OPPOSITION TO** |
| | ) | **MARIA SOSA'S BRIEF IN SUPPORT OF** |
| | ) | **MOTION FOR RELIEF FROM** |
| | ) | **AUTOMATIC STAY** |
| | ) | |
| | ) | Date:        February 19, 2015 |
| | ) | Time:        2:00 p.m. |
| | ) | Courtroom:  23 |
| | ) |               United States Bankruptcy Court |
| | ) |               235 Pine Street, 23rd Floor |
| | ) |               San Francisco, CA, 94104 |
| | ) | |
| | ) | |
| | ) | [Hon. Hannah L. Blumenstiel] |

Kingsway Capital Partners, LLC, debtor and debtor in possession herein (the "Debtor") hereby submits the following memorandum of points and authorities in opposition to *Maria Sosa's Brief In Support Of Motion For Relief From Automatic Stay* (ECF No. 73) filed on January 8, 2015, as follows:

# I.    STATEMENT OF FACTS

On or around 2011, the Debtor began to lease a commercial space at 2148 University Ave., East Palo Alto, CA (the "Premises"). From 2011 to 2013, the Debtor paid rent to the landlord, Maria Sosa, and/or the Maria Sosa trust, without a written lease agreement. On January 29, 2013, the Debtor signed a five year lease agreement with Maria Sosa. The lease provided for rental payments of $1,750.00 per month. Between December, 2013 and January, 2014, heavy rainfall caused damage to the Premises, as well as damage to the Debtor's business property and the Debtor's responsible individual's personal property located at the Premises.

On or around January, 2014, the Debtor contacted landlord Maria Sosa to inquire about repairing the Premises. The Debtor further inquired whether Maria Sosa would compensate the Debtor and/or Debtor's responsible individual for damages to business and personal property. Maria Sosa and the Debtor met on or around February, 2014 to discuss repairing the Premises.

Following the February, 2014 meeting, in March, 2014, the Debtor's responsible individual prepared a Memorandum of Understanding for Maria Sosa to sign which stated that Maria Sosa would 1) repair the Premises and 2) compensate the Debtor for business and personal property damages. Maria Sosa never signed the Memorandum of Understanding. Because Maria Sosa failed to agree that she would compensate the Debtor for damages to business and personal property, and because the roof had not been satisfactorily repaired, the Debtor withheld rent on or around April or May, 2014. As of January, 2015, the roof still leaks from heavy rainfall.

Maria Sosa filed an unlawful detainer action on July 8, 2014. The Debtor first received notice of the unlawful detainer proceeding around July 12 or 13, 2014, four to five days after it was filed, when a process server left the papers underneath the door.

However, even though the Debtor received notice of the unlawful detainer proceeding on July 12 or 13, 2014, the Debtor never received the "3-Day Notice To Pay Or Vacate." The proof of service of the "3-Day Notice To Pay Or Vacate" states that Maria Sosa personally served the Debtor's responsible individual on July 1, 2014. The Debtor disputes this fact. The Debtor never received the "3-Day Notice To Pay Or Vacate" until it was included with the unlawful detainer paperwork served on July 12, or July 13, 2015.

Moreover, the commercial lease specifically says that all notices are to be mailed to a specific address for both the landlord and the tenant to be valid. The "3-Day Notice To Pay Or Vacate" was never mailed to the address specified by the Debtor in the commercial lease.

Further, the owner of the Premises is not Maria Sosa but a trust. Since the Premises were owned by a trust and not Maria Sosa at the time the "3-Day Notice To Pay Or Vacate" was allegedly served and the unlawful detainer proceeding instituted in the name of Maria Sosa both the "3-Day Notice To Pay Or Vacate" and the unlawful detainer proceeding are invalid. No judgment for possession has been entered against the Debtor in the unlawful detainer proceeding.

The current rental rate of $1,750.00 per month to rent the Premises is below the current market rate should the Debtor be evicted and required to rent a similar space in East Palo Alto, California. The rental rate is rent controlled. If the Debtor were to be evicted from the premises, the price to rent a similar office space in East Palo Alto, CA would cost approximately $3,000 to $3,500. Evicting the Debtor would cause a substantial hardship on the Debtor because the Debtor would be required to pay substantially higher prices to rent a similar space.

The Debtor is able to reinstate the lease under California Code of Civil Procedure ("CCP") 1174(c) by paying back the past due rent, as well as interest thereon, in full, pursuant to CCP 1174(c).

## II. ARGUMENT

### A. Legal Standards Governing Motions To Assume Commercial Leases In Which A Three Day Pay Or Quit Notice Has Been Given And An Unlawful Detainer Proceeding Filed By The Landlord

The ninth circuit in *In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988) held that "[U]nder California law a lease terminates for nonpayment of rent at least by the time the lessor files an unlawful detainer action, provided that a proper three-days' notice to pay rent or quit has been given, and the lessee has failed to pay the rent in default within the three-day period, and further provided that the lessor's notice contained an election to declare the lease forfeited." *In re Windmill Farms, Inc.*, 841 F.2d. at 1471.

The ninth circuit stated that if the three-days' notice was insufficient under California law, then the lease did not terminate pre-petition and can be assumed in the bankruptcy case. *Id.* However, if the three days notice was sufficient under California law, then a motion to assume the commercial lease could *still* be filed if the lease could be resurrected under California anti-forfeiture laws. *Id.* at 1471-72. ("Even though the lease may have been terminated before WFI filed its Chapter 7 petition in bankruptcy, the trustee may be entitled to relief from forfeiture of the lease under California law. If so, the trustee's assumption of the lease would be proper.")

The ninth circuit in *Windmill* developed a two-part test to determine whether a commercial lease can be assumed in bankruptcy: 1) Was the three-days' notice sufficient under California law? and 2) If it was, can the lease be resurrected by California anti-forfeiture laws? *Id.* The ninth circuit further stated that the statutes to look at for California anti-forfeiture rules are California Code of Civil Procedure ("CCP") § 1179, "or any other ant-forfeiture provision of California law." *Id.* at 1472.

California law provides for anti-forfeiture in two primary statutes. The first is under CCP § 1174. CCP § 1174 restores a terminated lease to the status of non-terminated through payment of back rent, in full, with interest and costs. *In re Burke*, 76 F.Supp. 5, 8 (S.D. Cal. 1948); *California Code of Civil Procedure* § 1174(c). Such relief is "automatic" and does not require a court hearing or evidence, simply the payment in full of back rent. *In re Burke*, 76 F.Supp. at 8.

CCP § 1179, on the other hand, permits relief from forfeiture of a commercial lease on notice and a hearing, along with a showing of hardship. *In re Burke*, 76 F.Supp. at 8*; California Code of Civil Procedure* § 1179.

Relief under CCP § 1174(c) may be made up to five (5) days after a judgment in an unlawful detainer case. CCP § 1174(c). Relief under CCP § 1179 may be filed up to thirty (30) days after a judgment in an unlawful detainer case. *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal.App.3d 1032, 1063 (1987). No judgment has been entered in the unlawful detainer case against the Debtor so the Debtor may seek relief from forfeiture of the lease under both CCP § 1174(c) and CCP § 1179. However, this Court need not even reach this stage in granting relief to the Debtor because the three days' notice was not sufficient under California law.

**B.** **The Debtor's Commercial Lease Did Not Terminate Pre-Petition Because The Three Days' Notice Was Not Sufficient Under California Law.**

*In re Windmill Farms* stated that if the three days' notice was insufficient under California law, then the lease did not terminate pre-petition and can be assumed in the bankruptcy case. *In re Windmill Farms, Inc.*, 841 F.2d. at 1471.

Sufficiency of the three day's notice is governed by California Code of Civil Procedure §§ 1161 and 1162, as well as California case law governing these sections. CCP § 1161 governs giving notice to the tenant to cure within the three day time period and CCP § 1162 governs service of the three days' notice.

A three days' notice is valid and enforceable only if the lessor has strictly complied with the statutorily mandated requirements for service. *See Bank of New York Mellon v. Preciado*, 224 Cal.App.4th Supp. 1, 6 (2013); *See also Losornio v. Motta*, 67 Cal.App.4th 110, 114 (1998). Here, the statutorily mandated requirements for service of the three days' notice were not met, and therefore the lease did not terminate pre-petition. Therefore, since the commercial lease did not terminate pre-petition, it is assumable in this bankruptcy case.

**1.** **The Three Days Notice Was Insufficient Because It Was Not Mailed To The Address Provided For In The Commercial Lease.**

Normally, service of the three days' notice can be accomplished in any way outlined in CCP § 1162. However, "[i]n *commercial* leases the landlord and commercial tenant may lawfully agree to notice procedures that differ from those provided in the statutory provisions governing unlawful detainer." *Culver Center Partners East No. 1, L.P. v. Baja Fresh Westlake Village, Inc.*, 185 Cal.App.4th 744, 750 (2010)(emphasis added). In *Culver*, the Court noted that the lease contained a paragraph 31 which stated that notices, to be effective, must be mailed to the address provided by the tenant in the lease, or as otherwise changed from time to time. The Court held that because the landlord emailed the three days' notice to the tenant, and the tenant received actual notice, this was not sufficient to effect service of process on the tenant because it did not comply with the requirements of the lease. *Id.* at 751-752. The Court in *Culver* thus held the service to be invalid.

Case: 14-31532   Doc# 91   Filed: 02/11/15   Entered: 02/11/15 11:11:48   Page 5 of 10

Similarly here, the commercial lease in this case contains a provision that says "Notices under this lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid addressed as follows…" followed by the Tenant's chosen address. The proof of service filed by Maria Sosa in this case says that it was personally served on Debtor's responsible individual. The proof of service does **not** state that it was mailed to the address specified in the commercial lease. Therefore, under the holding of *Culver Center Partners East No. 1, L.P. v. Baja Fresh Westlake Village, Inc.*, service of the three days' notice to pay or quit was defective and therefore insufficient as a matter of law.

### 2. Maria Sosa's Affidavit Of Personal Service Is Insufficient To Effectuate Valid Service Under California Code Of Civil Procedure § 1162 When The Fact Of The Personal Service Is Contested As Is The Case Here.

California courts have held that an affidavit of service alone, where service is contested, is not sufficient to meet the strict statutory compliance of CCP § 1162. *Liebovich v. Shahrokhkhany*, 56 Cal.App.4th 511, 514-15 (1997). The Court in *Liebovich*, in quoting the California Supreme Court, held that because the strict statutory requirements of CCP § 1162 put the whole case at issue, where service is contested, affidavits of service cannot be relied upon, and instead live testimony must be heard from the process server, and the opposing party be given an opportunity for cross examination. *Id.* The California Supreme Court stated:

> "It is an essential prerequisite to the maintenance of an action for unlawful detainer, under section 1161 of the Code of Civil Procedure, that a three days' notice ... should be served upon the defendants, as subdivision 2 of that section requires. It is equally essential to allege the service of such demand in the complaint, and, if controverted, prove it on the trial. Service is an act to be performed before suit, a fact to be alleged in bringing suit, and a fact to be proven to successfully maintain it, and *such fact is to be proven as any other disputed fact in the case.* The rule is, that the *best evidence* must be produced which the nature of the transaction will permit; the testimony of witnesses given in open court where the adverse party may have an opportunity of cross-examination. *Affidavits are not in the nature of the best evidence by which to prove issuable facts.*

*Id. citing Lacrabere v. Wise*, 141 Cal. 554, 556-57 (1904). Here, the Debtor contests that it was personally served by Maria Sosa on July 1, 2014. Debtor never received the three days' notice to pay or quit until after it was included with the unlawful detainer proceeding documents.

Because the Debtor contests the personal service of the three day's notice to pay or quit on July 1, 2015, the declaration filed by Maria Sosa is insufficient to meet the requirements of CCP § 1162. *Liebovich* and *Lacrabere* state that this Court must not rely on the declaration of Maria Sosa alone to establish proper service. Instead, a trial must be had with an opportunity to cross examine Maria Sosa in order for this Court to make a proper determination as to whether or not Maria Sosa is telling the truth.

The Debtor maintains, however, that a trial is not necessary, as under the holding of *Culver Center Partners East No. 1, L.P. v. Baja Fresh Westlake Village, Inc.*, this Court can hold that service was improper without even reaching the issue of the contested affidavit.

### 3.   The Premises Are Owned By A Trust, And Therefore Both The Three Days Notice To Pay Or Quit Is Insufficient As A Matter Of Law.

Embedded in CCP §§ 1161 and 1162 is the legal theory that the plaintiff in the underlying action has the legal right to sue. Standing is jurisdictional, meaning if there is no standing, the lawsuit cannot proceed. California Courts have recognized that when a third party obtains the property by way of a foreclosure sale, that party does not have standing in an unlawful detainer proceeding until the party has perfected its interest - merely showing that the property was purchased at a foreclosure sale is insufficient. *Stephens v. Hollis* 196 Cal.App.3d 948, 952 (1987); *Old Nat'l Fin. Servs. v. Seibert* 194Cal.App.3d 460, 465 (1987).

Where a defendant puts a plaintiffs ownership of a property at issue as an affirmative defense of an unlawful detainer proceeding, the plaintiff must then prove that element of the unlawful detainer proceeding to obtain a judgment. CCP § 431.30(b)(1). *Advantec Group, Inc. v. Edwin's Plumbing Co.* 153 Cal.App.4th 621, 627 (2007).

Here, county records show that the Premises have been transferred to a trust. The trust was not identified as the person to whom rent should be paid in the three days' notice nor was the trust the plaintiff in the underlying adversary proceeding. Accordingly, the three days' notice was insufficient as a matter of law.

**C.** **Even If This Court Finds The Lease Terminated Pre-Petition, The Debtor Is Entitled To Anti-Forfeiture And Reinstatement Of The Lease Under California Law.**

Even if this Court finds that *Culver*, *Liebovich* and *Lacrabere* do not apply to this proceeding, the ninth circuit has stated in *In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988) that the Debtor can still assume a lease that has terminated pre-petition if the Debtor is entitled to anti-forfeiture of said lease under California law. Here, the Debtor is entitled to anti-forfeiture under CCP §§ 1174(c) and 1179, and therefore this Court should find that the Debtor can assume the lease, should the Court conclude that the lease terminated pre-petition.

**1.** **The Debtor Is Entitled To Anti-Forfeiture Under CCP § 1174(c) Because No Judgment Has Been Entered In The Unlawful Detainer Proceeding And The Debtor Can Pay In Full The Back Rent.**

CCP § 1174(c) provides for anti-forfeiture of a commercial lease where the tenant pays all of the back due rent, plus interest and costs, before judgment in an unlawful detainer case. CCP § 1174(c). Such relief is "automatic" and does not require a court hearing or evidence, simply the payment in full of back rent. *In re Burke*, 76 F.Supp. 5, 8 (S.D. Cal. 1948).

Here, should the Court find the commercial lease to have terminated, the Debtor can reinstate the terminated lease under CCP § 1174(c). The Debtor's schedules show back rent owing of approximately $8,000, and the Debtor's monthly operating report shows available cash balance of approximately $10,000. Therefore, should the Court find the lease terminated, the Debtor submits that it will pay the back rent in full to reinstate the lease for purposes of assuming the 5 year lease in this chapter 11 bankruptcy proceeding.

**2.** **The Debtor Is Entitled To Anti-Forfeiture Under CCP § 1179 Because The Debtor Will Suffer Hardship If The Debtor Is Evicted From The Rent Controlled Premises.**

*In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988) specifically provided that the bankruptcy court should determine if the Debtor is entitled to anti-forfeiture under CCP § 1179.

Relief from termination under the anti-forfeiture provisions of CCP § 1179 requires a showing of "hardship."

Hardship alone will not always justify relief, as in almost all cases there will be hardship to the tenant. *Thrifty Oil Co. v. Batarse*, 174 Cal.App.3d 770, 777 (1985). Instead, the Court should engage in a weighing and balancing of the equities vis a vis the landlord and tenant. *Id.* Some factors to consider are:

> Examples of considerations to be examined in this weighing process include: the nature and character of the breach; the hardship, if any, to the lessee from the forfeiture; the hardship, if any, to the lessor from relieving the lessee from the forfeiture; the reasons why consent for assignment was not sought; the knowledge (or whether there should have been knowledge) on the part of the sublessee that consent for the sublease was not requested; the good faith or lack of it on the part of any party, whether lessor, lessee or sublessee; the extent of bad faith, if any, on the part of any party, whether lessor, lessee or sublessee; the degree of arbitrariness or unreasonableness on the part of the lessors, if such exists, in not honoring the assignment; and any other similar factors relevant to the issues to be resolved.

*Thrifty Oil Co. v. Batarse*, 174 Cal.App.3d 770, 777, 778 (1985). Here, the Debtor asserts that the landlord first breached the lease by failing to maintain the premises in good repair, an express obligation of the landlord under the contract. Then, only after the landlord failed to repair did the tenant withhold rent. The tenant did so acting under the "deduct and withhold" theory behind residential implied warranty of habitability, a practice common in residential leaseholds. Such a breach was in good faith and pursuant to the contractual obligations of the landlord to maintain the premises in good repair.

Second, the hardship to the Debtor lessee will be great as the Debtor is in rent controlled property which currently rents for $1,750.00 which the Debtor may have to pay $3,000 to $3,500 to rent a similar space should the Debtor be evicted.

The hardship to the lessor according to the Declaration of Maria Sosa is that Maria Sosa cannot close escrow on the sale of the property, and if Maria Sosa is required to re-sell the property, Sosa does not think she will get as high of a price if the Debtor is permitted to retain the 5 year lease as Sosa will need to disclose this litigation. *See Declaration of Maria Sosa* in support of the Motion for Relief from Stay (ECF No. 73).

Other factors include the good faith or bad faith. As stated before, the Debtor withheld rent in good faith acting on the express contractual provisions of the lease that provided the landlord would maintain the premises in good repair. The Debtor therefore acted in good faith.

A weighing and balancing shows that the scales tip in favor of relief from forfeiture under CCP § 1179, as outlined above. Moreover, since CCP § 1179 is equitable in nature, this Court has broad discretion to relief a tenant from forfeiture. *Gill Petroleum, Inc. v. Hayer*, 137 Cal.App.4th 826, 833 (2006). Therefore, this Court should find that if the lease terminated pre-petition, the Debtor is entitled to relief from forfeiture under CCP § 1179 as well as CCP § 1174(c).

## III.     CONCLUSION

Based on the foregoing, the Debtor requests that this Court find that the Debtor is entitled to assume the five year lease either because 1) the Three Days' Notice was insufficient as a matter of law; or 2) that the Debtor is entitled to anti-forfeiture of the five year lease under California law.

Date: February 11, 2015                **C. ALEX NAEGELE**
                                        **A PROFESSIONAL LAW CORPORATION**


                                        By:  /s/ C. Alex Naegele
                                             C. Alex Naegele (Cal. Bar No. 255887)
                                             Attorney for Kingsway Capital Partners, LLC
                                             Debtor and Debtor in Possession