C. Alex Naegele (CA Bar No. 255887)
C. ALEX NAEGELE,
A PROFESSIONAL LAW CORPORATION
95 South Market Street, Suite 300
San Jose, CA, 95113
Telephone: (408) 995-3224
Facsimile: (408) 890-4645
Email: alex@canlawcorp.com

Attorney for Kingsway Capital Partners, LLC
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 14-31532 HLB |
| Kingsway Capital Partners, LLC | Chapter 11 |
| Debtor. | **DECLARATION OF NATHANIEL SOBAYO** |
| | Date: February 19, 2015 |
| | Time: 2:00 p.m. |
| | Courtroom: 23 |
| | United States Bankruptcy Court |
| | 235 Pine Street, 23rd Floor |
| | San Francisco, CA, 94104 |
| | [Hon. Hannah L. Blumenstiel] |

I, Nathaniel Sobayo, hereby declare:

1. I am the sole owner-member, president, and responsible individual of Kingsway Capital Partners, LLC the debtor and debtor in possession (the "Debtor") in the above-captioned Chapter 11 case. I have personal knowledge of the facts set forth in this declaration, and if called to testify, would and could testify competently thereto. As to those matters stated on information

DECLARATION OF NATHANIEL SOBAYO - 1

and belief, I believe them to be true. I make this declaration in support of the Debtor's opposition to Maria Sosa's motion for relief from stay.

2. On or around 2011, the Debtor began to lease a commercial space at 2148 University Ave., East Palo Alto, CA (the "Premises").

3. From 2011 to 2013, the Debtor paid rent to the landlord, Maria Sosa, and/or the Maria Sosa trust, without a written lease agreement.

4. On January 29, 2013, the Debtor signed a 5 year lease agreement with Maria Sosa. A copy of this lease is attached hereto as "Exhibit A."

5. The lease provided for rental payments of $1,750.00 per month.

6. Between December, 2013 and January, 2014, heavy rainfall caused damage to the Premises, as well as damage to the Debtor's business property and my personal property located at the Premises.

7. I contacted landlord Maria Sosa to inquire about repairing the Premises in January, 2014. I further inquired whether Maria Sosa would compensate the Debtor and/or myself for damages to business and personal property.

8. Maria Sosa and I met on or around February, 2014 to discuss repairing the Premises. At that meeting was a repairman, Jeffrey Johnson, owner of Roof Guard Company, Inc., and the property manager of the Premises, Patrick Brock.

9. Following the February, 2014 meeting, in March, 2014, I prepared a "Memorandum of Understanding" for Maria Sosa to sign which stated that Maria Sosa would 1) Repair the Premises and 2) Compensate the Debtor and myself for business and personal property damages. A true and correct copy of this Memorandum of Understanding is attached hereto as "Exhibit B."

10. Maria Sosa never signed the Memorandum of Understanding.

11. Because Maria Sosa failed to agree that she would compensate the Debtor and/or myself for damages to business and personal property, and because the roof had not been satisfactorily repaired, I withheld rent on or around April or May, 2014. As of January, 2015, the roof still leaks from heavy rainfall in December, 2014.

12. I am informed and believe that Maria Sosa filed an unlawful detainer action on July 8, 2014.

13. I first received notice of the unlawful detainer proceeding around July 12 or 13, 2014, four to five days after it was filed, when a process server left the papers underneath the door. A true and correct copy of the papers I received are attached hereto as "Exhibit C."

14. However, even though I received notice of the unlawful detainer proceeding filed on July 8, 2014, I never received a "3-Day Notice To Pay Or Vacate" as stated on page 9 of Exhibit C on July 1, 2014, either in person, by mail, or posted on the door of the Premises.

15. The "proof of service" for the "3-Day Notice To Pay Or Vacate" on page 11 of Exhibit C states that the "3-Day Notice To Pay Or Vacate" was personally served on me by Maria Sosa on July 1, 2014. I was not served personally or by mail with the "3-Day Notice To Pay Or Vacate" by Maria Sosa on July 1, 2014. In fact, I was not personally served with the "3-Day Notice To Pay Or Vacate" at all prior to July 12 or 13, 2014 when it arrived as part of the unlawful detainer lawsuit paperwork.

16. Moreover, I have not seen Maria Sosa in person since March, 2014 when Maria Sosa refused to sign the Memorandum of Understanding.

17. Further, I am informed and believe that a plaintiff cannot serve their own legal pleadings in lawsuits. Page 11 of Exhibit C states that the "3-Day Notice To Pay Or Vacate" was personally served by Maria Sosa on July 1, 2014, who is the plaintiff in the underlying unlawful detainer proceeding. I am therefore of the belief that the service was invalid.

18. Moreover, the commercial lease specifically states that all notices are to be mailed to a specific address for the landlord and for the tenant for them to be valid. See Exhibit A, Pages 4-5. I never received the "3-Day Notice To Pay Or Vacate" at the address specified in the commercial lease.

19. Moreover, I believe that both the "3-Day Notice To Pay Or Vacate" and the unlawful detainer proceeding are invalid because the Premises are owned by a trust. I base this belief on San Mateo County records which show the Premises as having been transferred to a

trust on September 24, 2008. A true and correct copy of this document is attached hereto as "Exhibit D."

20. I am informed and believe that no judgment for possession has been entered against the Debtor in the unlawful detainer proceeding.

21. I believe the rental rate of $1,750.00 per month to rent the Premises to be below the current market rate should the Debtor be evicted and required to rent a similar space in East Palo Alto, California.

22. I am further informed and believe that the rental rate is rent controlled. I base this belief on the unlawful detainer paperwork served on me. Specifically, I rely on page 6 of Exhibit C.

23. I further believe that if the Debtor were to be evicted from the premises, the price to rent a similar office space in East Palo Alto, CA would cost approximately $3,000 to $3,500.

23. I therefore believe that the evicting the Debtor would cause a substantial hardship on the Debtor because the Debtor would be required to pay substantially higher prices to rent a similar space.

24. Should this Court find the lease was terminated, the Debtor is able to reinstate the lease under California Code of Civil Procedure ("CCP") 1174(c) by paying back the past due rent, as well as interest thereon, in full, pursuant to CCP 1174(c).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of February, 2015, at East Palo Alto, California.

        /s/ Nathaniel Sobayo
        Nathaniel Sobayo